for the appellant, Mr. McNutt, for the appellee, Mr. Schmidt, and Mr. Seed. Good afternoon, Your Honors. This case is an interpretation of a particular assessment statute as part of the Property Tax Code. It is the position of the appellant, Your Honor, that the Property Tax Appeal Board has misapplied this statute. It hasn't read it literally. It has assumed that it says things that simply are not there. This is a provision having to do with supportive living facilities, which are defined in another part of the Statutes of Illinois. If you have a supportive living facility, then the way the assessment for tax purposes is supposed to be done is according to 10390 of the Code. Now, generally, when we talk about an assessment, there are several ways to assess property. One would be a recent sale. If the property had recently been purchased, we would use that value as determining the fair market value. If it hasn't been sold recently, then we can look at comparative sales, recent sales that are similar properties in the area. We can also look at the replacement costs, trying to determine what the value of the property is. Another method is called the income capitalization approach. And if a piece of property has income, then the appraiser can look at that and apply a capitalization factor to it. And we're really trying to come up with what bag of money produces this amount of income per year. And that's what the appraiser is trying to do. And so if you have higher income, the bag of money has to be larger. If the income is reduced, the bag of money is smaller. This statute, Your Honors, says that Moultrie County must use this method, the income capitalization approach. So they take away all the other ways that you can appraise property and leave just this one method. It then goes on to say that because this is a supportive living facility which receives Medicaid money, the appraiser, once they determine the income capitalization approach, they must remove the Medicaid money out of the equation. Removing income reduces the bag of money. Now, what happened in this case is that the appraiser for Moultrie County said, well, I'm going to remove the Medicaid money, but I'm also going to remove certain subjective expenses that I think that are related to the Medicaid funds. Mr. McNutt, when I started reading this, the first thing that came to mind for me is, is there a place where the income capitalization approach is definitively defined? I mean, everyone agrees that's the approach that is to be used, but the disagreement seems to come about when we look at what that involves, using that approach. What do you include or not include? Well, Justice White, I think that there was unanimity of opinion in that room the day they had the hearing because the appraiser for the appellate said that this statute does not allow the removal of the expenses. The appraiser for the county said, I don't see in there any place where I can remove the expenses. And the administrative law judge who wrote this opinion says very explicitly that there's nothing in the statute that allows for the removal of the expenses. Now, if that's true, then the case of Guito versus Chicago, which is the Illinois Supreme Court case about how you interpret taxing cases, says you read the statute literally and apply it. And if there's any disagreement as to how it's to be applied, you construe it in favor of the taxpayer. The way the P-Tax Board in this case did it was the opposite. They inferred that there was an ambiguity, which there was not, even though everyone agreed there was no ambiguity, and then they construed it against the taxpayer. Therefore, that's the reason this appellate court should reverse the P-Tax decision in this case. What about the notion that we shouldn't construe it in a way that would lead to absurd results? Do we even get to that if we find that there is no ambiguity? Isn't that something that we still consider even if we don't find that it's ambiguous? I tried to be clear in the brief that we don't even reach that point. But let's assume that we do see an absurd result here. What's the cause of the absurd result? The appellate asserts that it's not the removal of these expenses. It's not these expenses that is causing the so-called subjective absurd result as it's seen by the county. Rather, it's limiting the way that the appraisal must be made. It's the fact that you have to stay within the income capitalization approach. That's what causes the so-called absurd result. And their own appraiser said that. He said on cross-examination, you know, if you get, he says, income properties, you often get a negative value. That's not at all unusual that you'd have a, you remove the income, you get a negative value. He said what the problem here is that I can't go back and decide the highest and best use. I don't revisit that. And I don't, I can't look at recent sales. I can't look to see if this property has been recently sold. I can't look at replacement value. So I'm limited. And in that limited, then they call that a so-called absurd result. I submit that if, for example, if this property is over in Moultrie County, if it was in Decatur, in one of the poor areas of town, then the fact that you get all this income, that would cause the building to be over-assessed there. And that might also be an absurd result. Over in Moultrie County, they feel that it's under-assessed. So I think you have to apply the language as it's written. And if you do that, then it is clear that the decision was incorrect. I want to ask you a question. I think it's similar with Justice Holder White asked you, but in a different way. Under the income capitalization method of valuing property, do they use a net income approach? In other words, you have this money that's being paid for Medicaid services that the statute clearly wants out of the equation. But in the income capitalization approach, would you also take expenses related to that income and set it off against the income for Medicaid services? Is that the usual practice in an income capitalization approach? I believe that's the case. The appraisers were very clear, especially the appraiser for Peterson. In fact, it's reported in the decision. She got all of the income, the net income, out of her equation when she applied her capitalization and came up with the amount, her valuation. But this statute doesn't talk about net income. It specifically says payment for Medicaid for services and payments by a resident that would have been paid by Medicaid if the resident had been qualified. So that's what's to come out. The question then is do you infer or is there any language in here that will allow you to take out additional expenses, subjective expenses? But prior to the statute saying that, doesn't it say you're going to apply the income capitalization approach? Yes. It does. It says you will use, but everyone in that room agreed that there was no provision to take out the expenses that Mr. Webster took out. It's not in the statute. But the point, Mr. McNutt, is if there is a defined income capitalization approach, if that is defined in a specific way in that you exclude income from services, but you also are not entitled to include your expenses from that same income, if that is the definition of using the income capitalization approach, then maybe what the assessor did was right. I mean, that's what we're getting at. Well, I would refer you to the brief, my brief, which has the opinions. And in the appendix of page A-19, this is the decision of PTAB, and it says, in summary, Mr. Webster, who was the Moultrie County assessor, acknowledges that he made his own interpretation of the statute and further acknowledged that the statutory provision did not require the exclusion of those particular expenses. So the experts have decided that these expenses are not part of the income capitalization approach. This is something he did in addition to and in response to the requirement that he must remove the payments for Medicaid. I'll see what opposing counsel thinks about that, because I believe that he felt that he was using the income capitalization approach and doing what he did in his interpretation of what that means. This isn't the position of the appellate, but this is the decision of the board. I understand. Thank you very much. Thank you, counsel. Thank you, Your Honors. May it please the Court and counsel, my name is John Schmidt. I'm an assistant attorney general, and I represent the Property Tax Appeal Board. Your Honors, the answer to Justice Polk's question is yes, that is part of the income capitalization approach. It would involve considering income and expenses that relate to the real estate, but not considering business-related expenses. And that's because in Illinois, and I think this is true in most other states, the tax is on the real property. It's not on the business. So expenses that are related to the business itself are not expenses, and income related to the business itself would not be included. And that's overarching. That doesn't have anything to do with nursing homes or care facilities. That's overarching. That's your definition of this approach. So income and expenses related to income, basically. Or services, income and expenses related to services. The services from a business would not be counted. What it does take into account is rental income, and that's the situation in which the income approach is classically used when the property's primary income comes from rentals. So in this case, what was considered was the value of the rental income from each of the units, and also expenses that would have been related to the property itself, things like maintaining the grounds, maintaining the buildings, would have been considered. But income and expenses from providing services to patients would not have been considered. Really what we're saying is they didn't need to put 10390B in because 10390A already covered that and already would have excluded the business-related income, the income from services related to patients, and the business-related expenses, the expenses. And of course the problem is nowhere in the statute does it say that you have to consider those business-related expenses, that it's inappropriate to consider those. It talks about income, but it doesn't say anything about expenses. No, and that's right, Your Honor, and that's something that our agency had to deal with, and the best answer we could come up with is that this is the best way to interpret the statute, that both the income and both the business-related income and expenses, excluding those, is inherent in the income capitalization approach, and also it stems from the fact that Section 109390A refers to determining the fair market value of the property, meaning the real property itself, not the business. And the Dublin Senior Center Limited partnership case from Ohio talks about this. Now, unfortunately, we don't have a lot of case law in Illinois regarding the income approach because it's probably the least favored approach. Illinois courts generally say you go with the sales comparison approach. So we don't have... I mean, does this statute need to be amended? Because, I mean, if we read it and we read what it says and find that it says what it means, Mr. McNutt wins. I don't think so, Your Honor. I think because of Section 10... It's not a well-written statute, but I think because of Section 10390A, which again says you're determining the fair market value of just the property, not the business, and if you're not determining the fair market value of the business, then you exclude business-related expenses and income in the income approach. But then why did they go on to specifically mention income but not expenses? Well, the best answer I can give, and this is part of the legislative history, which PTAP quotes... Because we don't get to if we don't find that there's an ambiguity, right? If you don't find... That's correct, but Senator Cullerton... This is the appendix of the Petitioner's Brief, A78 and 79. He said basically that it was intended to clarify that the income was to be excluded. So it was intended as a clarification and not really a change of existing law. If the statute is interpreted the way that Peterson asked, it's a huge change. It's really... It's a very big change that would really constitute a huge break for supportive living facilities. I mean, stated another way, A and B contradict each other. In the sense that, given your definition of the income capitalization approach, the absence of the reference to expenses in B is either an oversight or an inconsistency. They're saying, we want you to use this approach, but... And we want you to use this approach with assisted living facilities, but it's only on the income side. Your Honor, I think a better way to characterize it is A renders B superfluous, because they just didn't need to go there. The income was already... Business income was already excluded from consideration by virtue of A. They didn't need to go there. I think it's redundant, but they were only redundant as to the income and not the expenses. And I know that's a very badly written statute. And, you know, it's... PTAP was really in the position that you're going to be in. And, you know, I understand the Court's concerns, believe me.  I think it's clear, but on the opposite end from Mr. McNutt, just because it does say the object is to ascertain the fair market value of the statute using the income capitalization approach. And if we only subtract out the business-related expenses, the expenses from providing services to patients, and we don't also not... and we still consider the income from services related to patient, you're not going to get the fair market value. In this case, their appraiser's values for each year were roughly $300,000 for a 50-unit building that would produce gross income probably of around $1 million a year because the rent for the studio units is $1,975 a month. For the one-bedroom units, it's $2,400 a month. So assuming they're all occupied, that's a huge... it's producing, like I said, probably over $1 million a month, and yet the value would be around $300,000. So if it is ambiguous, our construction would be, we think, easily the most reasonable. And that's why we would say the result would be absurd because that would be an extremely low valuation. And in this regard, I know Mr. McNutt disagrees that that's an absurd result, but this is an area where the Property Tax Appeal Board has some expertise in, you know, determining what, you know, the value of properties are and should be. And, you know, it determined here that that would be, you know, way too low a result. So your position, just so I can make sure I've got it correctly, your position is that it is not ambiguous that the income capitalization approach inherently involves the exclusion of income related to services and expenses related to services. Yes, and I would add to that that it's also not ambiguous because if you're trying to ascertain the fair market value, then you should not be considering business related income or expenses. And again, that case out of Ohio that we cited, Dublin Senior Center does support us. It's true as counsel stated in his brief that that appraiser used all three approaches and then he averaged them together to find the value, but the Ohio court held that his appraisal was properly not considered by the equivalent of PTAB, that state's equivalent of PTAB, because he applied the income approach in error by not separating out business income and business expenses. He included both business income and expenses in his income capitalization approach. And the court said no, he should not have done that. I'm going to try this again, stating something another way. Simply, help me think about it. If you do what Mr. McNutt wants us to do, then you're not applying the income capitalization approach. Yes, I would agree with that. I would agree with that. And do we get to the issue of whether or not the result is absurd if we find that the statute is not, there is no ambiguity in the statute? You would not, Your Honor. You would not. If you find it unambiguous on either side, you're correct. You would not get there. Whichever way you rule, that's absolutely right. Anything further, Mr. Schmidt? I don't think so, Your Honor. And, you know, we've asked for affirmance of the board's decision and thank the court for its time. Thank you. Thank you. Mr. Butler? The notion that there was, that the income capitalization approach was not properly applied, there's nothing in the record for the decision of PTAP that that occurred. It was very clear, if you read the decision, that the income capitalization approach is to be applied to the property based upon its income versus expenses, getting down to what is the value of the property. The statute, however, goes on. It doesn't, the next part of the statute doesn't talk about net income. It doesn't talk about expenses. It says you're going to remove the payments for Medicaid. And that's what this appraiser did, Ms. Howard, did in her appraisal. She followed the statute explicitly and applied the words that were in the statute. PTAP is asking that we disregard the second part of the statute. I think that's what they're saying, whether they say it's superfluous or contradictory. My question is, is there a property appraiser, CPA, whoever, definition, an overarching definition of the income capitalization approach? And I think there is. And I think they both applied that here. Wait a minute, wait a minute. Expenses, I mean, forget that this is a nursing home. What do you do with business expenses that occur because you're generating income in the income capitalization approach? You remove the business part of the production of income out of, if you have a strip mall that have businesses there and it's generating income, you look only to what the income capitalization approach is trying to determine, what is the income off the real estate only? The fact that you have a business there, you disregard that. The income from the business itself. The income and the expenses also. That's correct. So you would agree, could I just nail you down on this, you would agree with Mr. Schmidt that the overarching approach under the income capitalization method sets the income and sets the expenses off of the income. That's correct, and that's what the statute says. What you're saying is the next step under this statute is an exception, and it's saying under the way we're telling you to do it, once you do that, then you take out the Medicaid payments. Yes. Related to services. Because they don't want the Medicaid to be part of the property tax equation. But isn't it already taken out if you follow the income capitalization approach? No, some of the Medicaid is there to pay for the rent. That's part of the property. But the statute says we're going to take out the Medicaid. There's not going to be any questions. Related to services. Right. Right. Services. Just related to services. And that's what the appraiser for Peterson did. She applied the income capitalization approach and removed the Medicaid payments. What she didn't do was go back and then subjectively remove expenses. You know, as I'm listening to the arguments, I think in Illinois we don't tax income tax, we don't tax pensions. And it's like saying, well, wait a minute, this particular individual has so much income coming in a pension that we should start taxing that individual. That's not the way the statute says it. I think there's a problem with that across the street. This is a touchy area. So, Mr. McDonough, I have another question for you. So when the statute tells them to not include income that is attributable to services and not attributable to real estate as related to the Medicaid for services, that's something outside the approach as far as if they were applying the income capitalization approach? That's a totally separate step and not related to applying that approach? That's correct. That's what you're saying? That's an additional step as it's written. Remove the Medicaid totally, whether it relates to the property or just get Medicaid. Are there patients there that are not Medicaid supported? I believe that there are. I don't know that for a fact. I believe that there are. Thank you very much. Thank you. We'll take the matter under advisement and await the readiness of the next case.